No. 14,811.

RESERVE BUILDING AND LOAN ASSOCIATION *v.*
JAMISON ET AL.
(119 P. [2d] 621)

Decided November 17, 1941.

Mr. BYRON G. ROGERS, Attorney General, Mr. FRANK P. LYNCH, JR., Assistant, Mr. CARL L. LOUGH, Assistant, for plaintiff in error.

Mr. S. M. TRUE, Mr. R. F. MARONEY, Messrs. GRANT, SHAFROTH & TOLL, for defendants in error.

*In Department.*

Mr. Justice Bakke delivered the opinion of the court.

Suit on a promissory note of the face value of $2,000 (designated as Exhibit A) brought by plaintiff in error, payee of the note through the State Building and Loan Commissioner as statutory receiver, upon voluntary liquidation, against defendants in error, stockholders of plaintiff in error. The principal defense was lack of consideration, which defense the trial court held was good. Defendant in error W. L. Johnson in a separate answer set up a cross complaint for $2,000 based on a note for that amount representing a sum he had loaned the plaintiff in error. The court rendered judgment on the cross complaint in favor of Johnson for the $2,000 and interest. Plaintiff in error, seeking reversal, will be referred to as the association, and the defendants in error will be designated as defendants, or by name.

The person most active in the affairs of the association was defendant Jamison, who on or about February 19, 1931, induced the other defendants to sign with him the note upon which the suit was brought. The association's contention is that a man by the name of Russell, a depositor of the association residing in St. Louis, had demanded return of his deposit in the sum of $2,000; that the association was short of ready cash, and that Jamison suggested to defendants that they sign the note to be used as collateral with one of the Denver banks for a loan of $2,000 to satisfy this demand. Defendants deny that the money to be obtained on their note was to be used for this purpose, and the testimony discloses that Jamison requested three of the defendants to sign the note on behalf of the association so that money could be raised for making some improvements on a dance pavilion located near Boulder. However, the bank refused to make the loan, whereupon Jamison contacted Johnson, the fourth defendant, requesting him also to

sign the note for $2,000, which he did, but Jamison still was unable to obtain the loan on the note and Johnson then personally advanced the money, taking in return therefor a collateral note (Defendants' Exhibit 2, which describes a mortgage on the Boulder property and Exhibit A) against the association as security. The $2,000 advanced by Johnson is represented by a cashier's check, payable to the association, and by it endorsed to "Dawn Ltd.", the name under which the above mentioned Russell was doing business in Denver. It is admitted that Russell received $2,000. What actually happened thereafter is very obscure, by reason of the fact that the minutes of the association concerning the transaction were apparently deleted, and it was not until Johnson filed his claim against the association with the Building and Loan Commissioner that the existence of the note (Exhibit A) was disclosed. The commissioner, through the district attorney, then demanded that the note be turned over to him. Meanwhile, the association had foreclosed the mortgage held by it on the dance pavilion and had taken title in its name. Johnson never took title to the dance property, and, presumably, it still is owned by the association.

While the attorney general presents three legal points, namely, that there was consideration for the note in suit, that Johnson was a comaker, and Johnson's estoppel, in support of the association's asserted right to a judgment on the note, they are all comprehended in the question, Is the association entitled to set off the note (Exhibit A) against Johnson's counterclaim? As to the provisions of the negotiable instruments law, there can be no contention that the association is a holder in due course for value. The association was charged with notice of the infirmities relating to the procurement of the note when Jamison as its principal officer obtained it. While Exhibit A is described in the collateral note given to Johnson, his uncontradicted testimony is that he

knew nothing about its being included as collateral in his note until he filed his claim.

A simple statement of this case, it seems to us, is that the association borrowed $2,000 from Johnson to retire an obligation to a depositor in that amount.

The association's assets are not diminished by payment of this indebtedness because of its transfer from Russell to Johnson, and Exhibit A, under the circumstances, could not be used as a set-off against Johnson's claim.

Johnson was not estopped from showing the true situation because the association had not changed its position by virtue of anything Johnson had to do with Exhibit A.

■ The association relies principally upon the case of *Reed v. First Nat. Bank,* 23 Colo. 380, 48 Pac. 507, to support its contentions, but in that case it was established that plaintiff bought the note in due course and, as we stated in the opinion in that case, "we would not be warranted in substituting our determination for that of the jury." So, in this case, we think there is clearly sufficient evidence to support the finding of the trial court, that there was no consideration for Exhibit A, and if the association was allowed its set-off it would be enriched to the extent of Johnson's loan.

■ Since no assignment of error is directed at the validity of Johnson's claim, as such, it is unnecessary to discuss it, except to say that under paragraph 14 of section 14, chapter 25, '35 C.S.A., he was precluded from making a sale of his collateral and his only recourse was to file his claim against the association.

Accordingly, the judgment is affirmed.

MR. JUSTICE YOUNG and MR. JUSTICE HILLIARD concur.

MR. JUSTICE OTTO BOCK concurs in the result.